IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RAL MOISES MONDONEDO,

                    Plaintiff,

          v.                          CASE NO.  12-3045-SAC

RAY ROBERTS,
et al.,

                    Defendants.

### MEMORANDUM AND ORDER

This civil complaint was filed by an inmate of El Dorado
Correctional Facility, El Dorado, Kansas.  Plaintiff seeks to
challenge an order by prison officials that he cease sending mail
to his two minor children.  He claims the acts of defendants violate
his constitutional rights under the First, Fifth and Fourteenth
Amendments, as well as various other federal and Kansas statutes.
He seeks an "immediate preliminary injunction" ordering defendants
to "cease and desist" from disallowing mail communication with his
children.  He also seeks money damages for "many actual injuries"
and mental and emotional injuries.  The court assesses an initial
partial filing fee, requires Mr. Mondonedo to cure deficiencies in
his complaint which include the failure to name a proper defendant,
and denies preliminary injunctive relief.


### FILING FEE

Plaintiff has filed a Motion to Proceed Without Prepayment of
Fees (Doc. 3), and has attached an Inmate Account Statement in
support as statutorily mandated.  Plaintiff is reminded that under

28 U.S.C. § 1915(b)(1), a plaintiff granted such leave is not relieved of the obligation to pay the full fee of $350.00 for filing a civil action.  Instead, being granted leave merely entitles an inmate to proceed without prepayment of the full fee, and to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2).

Furthermore, § 1915(b)(1) requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action.  Having examined the records of plaintiff's account, the court finds the average monthly deposit to plaintiff's account was $ 52.07, and the average monthly balance is $ 13.15.  The court therefore assesses an initial partial filing fee of $ 10.00, twenty percent of the average monthly deposit, rounded to the lower half dollar.  Plaintiff must pay this initial partial filing fee before this action may proceed further, and will be given time to submit the fee to the court.  His failure to submit the initial fee in the time allotted may result in dismissal of this action without further notice.

## FACTUAL ALLEGATIONS AND CLAIMS

Mr. Mondonedo is serving sentences for convictions of offenses that include Rape, Attempted Aggravated Incest, numerous counts of Aggravated Indecent Liberties with a child, and Criminal Sodomy with a child.  His allegations imply that he is classified as a sex offender.

The factual background of plaintiff's complaint is more simple than his prolix pleadings suggest. The allegations in the complaint, that are not conclusory statements or legal conclusions, are as follows. In April, 2011, plaintiff was notified that he was prohibited "from sending letters, and from further communicating with his two minor children, (I) age 7, and (G) age 2." Defendant Noe is the mother and sole custodian of plaintiff's two children. According to plaintiff, Noe contacted "and lied to the KDOC" and "Ray Roberts, et al.," that plaintiff had been writing to or communicating with her and her teenaged daughter AC, who apparently was his stepdaughter and the victim of his crimes, as well as his two minor children. Noe requested that KDOC and "Ray Roberts, et al" prohibit plaintiff from communicating with them all. Mr. Mondonedo had not communicated with the mother or her daughter AC for about 4 years. He had only communicated with I and G by sending them birthday and holiday cards. No evidence was presented by Noe, no hearing was held as to the veracity of her statements, and plaintiff was given no opportunity "to protest" her statements before the restriction was imposed. "In addition to being accused of something he did not do, plaintiff was threatened (by Roberts) into signing an order agreeing not to write, nor communicate with his children."[1]

Kansas Department of Corrections (KDOC) regulations and policy statements contain provisions that specifically apply to inmates classified as sex offenders. At the time plaintiff was notified to cease mail communication with his children, prison regulations

---

[1]    This agreement is neither provided with plaintiff's numerous exhibits nor summarized.

provided that a sex offender who had not completed a treatment program was prohibited from sending mail to victims of his crime. The definition of "victim" in the regulations was not limited to the person that had been sexually assaulted, but included the victim's family members as "secondary victims."  Regulations also provided that an inmate could be prohibited from sending mail to a person outside the prison upon that person's request to prison officials.

Plaintiff alleges that he has exhausted prison administrative remedies and provides exhibits of grievances and appeals.  He also alleges that after he filed his grievance appeal to Roberts, defendant Roberts changed KDOC policy by amending the IMPP "to pass future liability of their illegal actions to the persons contacting KDOC," and added "other justifications for their illegal actions" by citing sex offender regulations and IMPP 11-115.

Plaintiff sets forth 8 counts in his complaint.  In essence, he raises two constitutional claims: (1) that the prison policies and regulations applied to prohibit him from sending mail to his minor children violate his rights under the First and Fourteenth Amendments and (2) that he was not afforded adequate due process, such as a hearing and opportunity to present opposing arguments, before this restriction was placed on his outgoing mail.

Plaintiff has attached numerous exhibits to his complaint. Though he was not required to submit any evidence at this juncture, the court may now consider this portion of the administrative record as part of the complaint.

**SCREENING**

Because Mr. Mondonedo is a prisoner, the court is required by

statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.    28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Nevertheless, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. State of N.M., 113 F.3d 1170, 1173-74 (10th Cir. 1997).

**IMPROPER DEFENDANT**

"To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48-49 (1988)(citations omitted); Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992).  The only defendants designated in the caption of the complaint are Ray Roberts and plaintiff's former wife, now named Tiffany Noe.  Plaintiff states in his complaint that Ms. Noe was not acting under color of state law. Thus, it appears from the face of the complaint that Ms. Noe is not a proper defendant in this civil rights action.  Plaintiff alleges

that Noe conspired with defendant Roberts who was acting under color of state law.  A private individual acts "under color of state law" when engaged in a conspiracy with state officials to deny constitutional rights.  <u>Tower v. Glover</u>, 467 U.S. 914, 920 (1984).  However, "joint participation, agreement, or a 'meeting of the minds' to violate constitutional rights must be shown."  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970).  Plaintiff's pleadings do not "specifically present facts tending to show agreement and concerted action" between defendants Noe and Roberts.  <u>See</u> <u>Sooner Products Co. V. McBride</u>, 708 F.2d 510, 512 (10th Cir. 1983)("When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials . . . in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient.").  His bald allegations of such a conspiracy are simply not sufficient.[2]

As Count V, VI, VII, and IX, plaintiff claims that defendant Tiffany Noe committed perjury, "subordination (sic) of perjury," obstructed the legal process," and "committed criminal defamation."  In support, he repeats his allegations that Noe intentionally lied regarding his communicating with her and AC.  He claims she lied to get him into trouble, prevent him from communicating with his two minor children, and terminate his parental rights.  Such allegations regarding statements by a complainant or witness in an administrative setting do not evince a federal constitutional violation.  The court is fairly certain that Ms. Noe, as a private

---

[2]      As Count III, plaintiff alleges that Noe conspired with Roberts.  In support of this count, he simply reiterates his prior allegations, and baldly states that Roberts knew there was no evidence of Noe's statements.

individual and legal guardian of the minor children, could withhold mail sent to the children by Mr. Mondonedo without running afoul of the Constitution.

Accordingly, the court finds that defendant Noe is not shown to be a proper defendant in this action in federal court.[3]  Unless plaintiff provides additional specific facts establishing the elements of a conspiracy, this action will be dismissed as against defendant Noe.

Furthermore, plaintiff does not clearly allege facts showing that this court has personal jurisdiction over Noe, whom he alleges is a resident of a State other than Kansas.

**FAILURE TO ALLEGE PERSONAL PARTICIPATION BY DEFENDANT ROBERTS**

The court also finds that plaintiff does not allege sufficient facts to show that Roberts, the only other named defendant, personally participated in the decision to restrict plaintiff's outgoing mail to his children.  It is well-settled that an essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.  Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993)(affirming

---

[3]      Plaintiff's citations to many additional statutes are not accompanied by sufficient facts showing that they establish jurisdiction.  Nor does he provide any explanation as to how either defendant violated any of these statutory provisions or such a violation would amount to a viable claim in federal court. For one example, claims of violations of state criminal laws do not entitle plaintiff to any civil remedy in federal court.

district court's dismissal where "plaintiff failed to allege personal participation of the defendants"). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008). A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

In his complaint, plaintiff alleges that defendant Roberts is the Secretary of Corrections, and as such is "responsible for the conditions and operations of" the EDCF. He does not allege facts showing that Roberts either promulgated policies alleged to be unconstitutional or caused such policies to be applied against him. Roberts may not be held liable for the decision to restrict plaintiff's outgoing mail based upon a theory of respondeat superior. Moreover, Roberts' affirmance on administrative appeal of the denial of plaintiff's grievance is not adequate participation in acts challenged in the grievance that were committed at a prior time by others. See Arocho v. Nafziger, 367 Fed.Appx. 942, 955 (10th Cir. 2010)(unpublished)[4](The Tenth Circuit "has repeatedly held, albeit in unpublished decisions," that "the denial of . . . grievances alone is insufficient to establish personal participation in the alleged constitutional violations."). Instead, plaintiff must allege facts showing Roberts' direct personal participation in the

---

[4]    Unpublished opinions are not cited herein as binding precedent, but for persuasive value.  See Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

restriction decision.[5]

Plaintiff's allegations that defendant Roberts violated his rights and conspired with the mother of his children to violate his rights are completely conclusory, as are his claims that Roberts "neglect(ed) to act to prevent the conspiracy."[6]   Plaintiff's allegations generally refer to Roberts "et al."  He may not ascribe actions to defendant Roberts that were actually taken by other prison officials simply by appending "et al" to Roberts' name. Plaintiff's claim that Roberts amended regulations after the mail restriction was imposed upon him, does not include facts showing that plaintiff's constitutional rights were violated as a result.


**DAMAGES CLAIMS LIMITED**

Plaintiff's requests for large amounts of compensatory and punitive damages face the obstacle of 42 U.S.C. § 1997e(e).  Section 1997e(e) provides:

> No Federal civil action may be brought by a prisoner
> confined in a jail, prison, or other correctional
> facility, for mental or emotional injury suffered while in

---

[5]     Plaintiff exhibits a copy of the April 8, 2011, notice as "Exhibit A." This Notice is not signed by defendant Roberts.  Nor does it state therein that it was sent at the direction of Roberts.  Instead, the notice is from "S.A.S. T. Hermreck, EDCF EAI" and provides that Hermereck "received a written/verbal request concerning your personal correspondence and/or communication to Tiffany Mondonedo and her children (AC, I and G)" that was received "through the Intelligence and Investigation Unit" at the EDCF.  The notice also provides that Noe "has requested that you not correspond or communicate with them from this date forward." Mondonedo was told to consider the notice as "a direct order to immediately stop all personal correspondence and/or communications" with Noe and her children. Plaintiff was also notified that any further such communication directly or indirectly "shall result in disciplinary action being taken against you, which may result in loss of good time, phone privileges or mail restrictions."

[6]     Plaintiff's allegations that the acts of defendant Roberts were arbitrary, irrational, and "not reasonably related to a legitimate penological interest;" that Roberts acted as Noe's legal representative to punish plaintiff, in conspiracy with Noe, and with deliberate indifference; and that Roberts terminated his parental rights are nothing more than conclusory statements.  As such, they are not sufficient to state a claim and are not entitled to a presumption of truth.

custody without a prior showing of physical injury.
Id.  Mr. Mondonedo does not describe any physical injury that he has
suffered, and his claims appear to be founded only upon his alleged
mental and emotional distress.   However, § 1997e(e) does not limit
a prisoner's ability to receive injunctive relief to remedy
constitutional violations which are not physically injurious.   See,
e.g., Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 807-09
(10th Cir. 1999); Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir.
2001).


## DENIAL OF MOTIONS FOR PRELIMINARY INJUNCTION

Mr. Mondonedo has filed a Motion for Temporary Injunction (Doc.
5) with Memorandum in Support and a Motion for Order to Show Cause
re Preliminary Injunction (Doc. 7).   A party seeking a preliminary
injunction "must demonstrate four factors: (1) a likelihood of
success on the merits; (2) a likelihood that the movant will suffer
irreparable harm in the absence of preliminary relief; (3) that the
balance of equities tips in the movant's favor; and (4) that the
injunction is in the public interest." RoDa Drilling Co. v. Siegal,
552 F.3d 1203, 1208 (10th Cir. 2009)(citing Winter v. Natural Res.
Def. Council, Inc., 555 U.S. 7 (2008)).   The Tenth Circuit has
plainly held that "because a preliminary injunction is an
extraordinary remedy, the right to relief must be clear and
unequivocal."   Beltronics USA, Inc. v. Midwest Inventory
Distribution, LLC, 562 F.3d 1067, 1070 (10th Cir. 2009)(quoting
Greater Yellowstone Coalition v. Flowers, 321 F.3d 1250, 1256 (10th
Cir. 2003)).

The facts plaintiff alleges in connection with his motions and

in his complaint do not amount to a strong showing of his likelihood of success on the merits.  Prison inmates plainly do not retain all the First Amendment freedoms of association and communication that they enjoyed prior to incarceration.  The restriction placed upon plaintiff's outgoing mail appears from his own exhibits to have been authorized by applicable prison regulations.  Plaintiff alleges no facts and presents no authority showing that the pertinent prison regulations or the mail restriction in this case cannot survive scrutiny under the standards set forth in Turner v. Safley, 482 U.S. 78 (1987).  Courts elsewhere have recently held to the contrary that a prison policy that restricts contact between a sex offender and his child victim is clearly rationally related to the legitimate interest of protecting victims and their families from unwanted communication and harassment by a prisoner when a victim requests such protection.  See e.g. Samford v. Dretke, 562 F.3d 674 (5th Cir. 2009); Alex v. Beard, 2010 WL 1416837 (M.D. Pa. Apr. 6, 2010).  A policy that prohibits an inmate's communication with minor children as secondary victims of his child sexual abuse offenses does not have the prisoner as the primary concern, but generally involves the best interest of the children.  Plaintiff has not made a sufficient showing that he is likely to succeed on his claim that the restriction in question is not rationally related to a legitimate penological interest.  Nor does he present any authority establishing that a hearing and opportunity to object are required under the Constitution before a sex offender's mail to those perceived as victims of his offense may be restricted.  Plaintiff's allegation that his natural children were not victims is contrary to the regulations applied in his case.  In addition, as noted it is

11

not even clear that he has named a proper defendant.

Plaintiff also fails to meet his burden of showing that he will suffer irreparable harm if he is not granted preliminary relief. According to plaintiff's own allegations, his children with which he seeks to communicate are 2 and 7, and before his confinement he communicated with them only by mailing birthday and holiday cards. These circumstances do not suggest that he will suffer irreparable harm if he is unable to send this type of mail to his young children until after this matter is fully litigated.

The "chief function" of a preliminary injunction is to preserve the relative positions of the parties until the merits of the controversy can be completely adjudicated. University of Texas v. Camenisch, 451 U.S. 390, 395 (1981); O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 977 (10th Cir. 2004); see Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265 (11th Cir. 2001). Mr. Mondonedo does not seek to preserve the status quo, which in this case is the prison officials' exercise of their discretion to restrict outgoing mail in accord with their regulations that is entitled to judicial deference. Instead, he requests preliminary injunctive relief to upset the status quo and obtain relief prior to a trial on the merits. Thus he seeks a particularly disfavored type of preliminary injunction, which requires that he demonstrate that the four factors "weigh heavily and compellingly in his favor." O Centro, 389 F.3d at 977.

Plaintiff's failure to establish either of the first two crucial factors is sufficient grounds to deny this motion. While he makes legalistic statements regarding each of the four factors, he does not adequately address the balance of equities or the public

interest factors, which obviously involve the best interest of children in a family victimized by sexual offenses. In sum, plaintiff's request for preliminary injunctive relief is denied because he has not satisfied his burden of clearly establishing the four prerequisites to this court's grant of such extraordinary relief. The court additionally finds that Mr. Mondonedo has not alleged sufficient relevant facts in his motions to warrant an evidentiary hearing on this matter.

## DENIAL OF MOTION FOR PROTECTIVE ORDER

Plaintiff has also filed a Motion for Protective Order (Doc. 9). In this motion, he asks the court to restrain defendants from punishing him for serving legal documents upon defendants in this case. Defendants have not been and need not be served in this case until the screening process is completed. Since defendants are not served, they are not yet required to respond to any motion or materials filed by plaintiff. As discussed earlier herein, it is not even clear that Noe and Roberts are proper defendants. There are no facts showing that plaintiff has been punished. If this action survives screening, the court will order service upon the defendants. If plaintiff is punished or threatened with punishment for serving any properly filed papers upon a proper defendant after defendants have been required to answer herein, he may seek relief by filing a motion at that time. The court denies this motion as frivolous because it is not supported by facts or legal authority showing that plaintiff is entitled to court action.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is granted

thirty (30) days in which to submit to the court an initial partial filing fee of $ 10.00.  Any objection to this order must be filed on or before the date payment is due.  The failure to pay the fees as required herein may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff is required to cure the deficiencies in his complaint discussed herein.[7]

**IT IS FURTHER ORDERED** that plaintiff's Motion for Temporary Injunction (Doc. 5), Motion for Order to Show Cause for Temporary Injunction (Doc. 7), and Motion for Protective Order (Doc. 9) are denied.

**IT IS SO ORDERED.**

Dated this 24th day of April, 2012, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge

---

[7]     Should plaintiff choose to cure the deficiencies in his complaint by filing an Amended Complaint, he is reminded that it must be upon court-provided forms and that it will completely supercede the original complaint.  Legal arguments and authorities are not required of a pro se litigant, but if provided should be submitted in a separate memorandum in support, rather than in the form complaint.