IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RALF M. MONDONEDO,

          Plaintiff,

     v.                            Case No. 12-3045-SAC

RAY ROBERTS, et al.,

          Defendants.


**MEMORANDUM AND ORDER**

     This 42 USC § 1983 case comes before the Court on Plaintiff's amended complaint, filed in response to the Court's order to cure deficiencies in the original complaint. Because the Plaintiff is a prisoner, the court is required to screen this pleading and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a), (b); 28 U.S.C. § 1915(e)(2)(B).

**I. Facts**

     Plaintiff is serving sentences for convictions of offenses including Rape, Attempted Aggravated Incest, numerous counts of Aggravated Indecent Liberties with a child, and Criminal Sodomy with a child. He admits that he is classified as a sex offender.

**Plaintiff's Allegations**

The allegations in the amended complaint that are not conclusory statements or legal conclusions follow. In April, 2011, defendant Hermreck signed an order prohibiting Plaintiff from sending letters, and from further communicating with his two minor children, (I) age 8, and (G) age 3. Defendant Noe, the mother and sole custodian of plaintiff's two children, had called the Kansas Department of Corrections (KDOC) and lied by saying that plaintiff had been communicating with her and her teenaged daughter AC (his stepdaughter and the victim of his crimes) and with his two minor children. Noe requested that KDOC prohibit plaintiff from communicating with them. Plaintiff states that he had not communicated with the mother or her daughter AC for about four years; that he had communicated with I and G only by sending them birthday and holiday cards; and that no court order prohibited his contact with his minor children.

No evidence was presented by Noe, no hearing was held as to the veracity of her statements, and no opportunity was provided plaintiff to protest Noe's statements before the no-communication order was imposed. Plaintiff also alleges he was threatened into signing that order.

**The Policy**

Plaintiff understood that the no-communication order was issued pursuant to IMPP 11-115, which governs sex offender treatment. Its provision on "Contact With Victims" stated, with exceptions not applicable to

this case, "sex offenders shall have no planned or voluntary, direct or indirect contact with victims (including visitation)." Dk. 1, Exh. A, p. 7 (IMPP 11-115 section V,A). The definition of "victim" in the policy was not limited to the person that had been sexually assaulted, but included the victim's family members. It defined "victim" as "[a]ny person who suffers direct or threatened physical, emotional or financial harm as the result of the commission or attempted commission of a crime against a person." Dk. 1, Exh. 1, p. 3. It then defined "primary victim" as "the person(s) directly impacted by the crime (i.e., the person who is sexually assaulted)," and defined "secondary victim/co-victim" as "the person(s) indirectly impacted by the crime (i.e., the family, friends, neighbors, etc. of the person who is sexually assaulted)." *Id.*, p. 3-4.

The same policy contained another section, "Limited Contact With Minors," which repeated the rule that sex offenders have no contact with minor victims, including their own children:

> Sex offenders' contact with minors outside the visitation process, including but not limited to mail [and] ... phone ... shall be limited to the inmate's children or immediate family members. If the inmate's sexually deviant behavior triggering this policy included their children or minor immediate family members, no contact ... of minor children or minor immediate family is allowed.

Dk. 1, Exh. A, p. 9 (IMPP 11-115 section B).

### Plaintiff's Administrative Actions

IMPP 11-115 also contained an override process permitting sex offenders to submit a written request to modify the method of their

3

management as a sex offender or to be excluded from management as a sex offender in whole or in part. Requests for overrides had to state the reason for the request, and were approved or disapproved by the Sex Offender Override Panel without a hearing. *Id.*, p. 4-6.

Plaintiff unsuccessfully grieved the no-communication order. Plaintiff provides exhibits of grievances and appeals and alleges that he has exhausted prison administrative remedies. He also alleges that after he appealed the denial of his grievance, the KDOC amended the relevant IMPP to shift future liability for its illegal actions from itself to the persons contacting the KDOC.

Plaintiff sets forth eight counts in his amended complaint, but in essence raises two constitutional claims: (1) that the prison policies and regulations applied to prohibit him from sending mail to his minor children violate his rights under the First and Fourteenth Amendments; and (2) that he was denied due process before this restriction was placed on his outgoing mail.

## II. Standard of Review

To withstand dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6), "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court must accept as true all factual allegations asserted in the complaint, dismissal is appropriate where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Inmates face hurdles in addition to *Iqbal's* pleading burden when, as here, they challenge a prison regulation as unreasonable. As a general matter, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In reviewing a pleading for dismissal, a court need only assess, as a general matter, whether the challenged prison regulation is "reasonably related to a legitimate penological interest." *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010). Analysis of all four *Turner* factors is necessary at the summary judgment stage, but need not be part of the analysis at the pleading stage. *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012); *Jones v. Salt Lake Cnty.*, 503 F.3d 1147, 1153–59 (10th Cir. 2007). The Court thus examines whether Plaintiff has "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Gee*, 627 F.3d at 1188.

## III. Proper Defendants

Personal participation is an essential allegation in a civil rights complaint. *See Fogarty v. Gallegos,* 523 F.3d 1282, 1287 (10th Cir. 2008) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.")

### A. Defendant Roberts

The court previously found (Dk. 10) that the original complaint failed to allege facts sufficient to show any personal participation by Ray Roberts, the Secretary of Corrections, in the decision to restrict Plaintiff's mail privileges or deny him a hearing. The amended complaint's caption omits Roberts as a defendant and its body makes no allegations against him. Accordingly, Ray Roberts is dismissed as a defendant in this case.

### B. Defendant Noe

The Court's prior order (Dk. 10) found that defendant Noe, Plaintiff's former wife who is not alleged to be a state officer or employee, would be dismissed as a defendant unless Plaintiff provided additional specific facts establishing her involvement in the alleged conspiracy.

"To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48–49 (1988) (citations omitted); *Northington v. Jackson,* 973 F.2d 1518, 1523

6

(10th Cir. 1992). Plaintiff does not assert that defendant Noe acted under color of state law, but alleges that Noe conspired with defendant Hermreck who acted under color of state law.

The fundamental elements of a § 1983 conspiracy claim are an agreement between the parties and concerted action in furtherance of that agreement. *See Reed v. Dunham,* 893 F.2d 285, 287 (10th Cir. 1990). To state a valid claim, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1998). As the Court previously noted, a private individual acts "under color of state law" when engaged in a conspiracy with state officials to deny constitutional rights. *Tower v. Glover*, 467 U.S. 914, 920 (1984). However, "joint participation, agreement, or a 'meeting of the minds' to violate constitutional rights must be shown." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).

> When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials . . . in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action.

*Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983).

Plaintiff's amended complaint alleges that defendant Noe acted under color of state law by "using a State entity and conspiring with a State employee to induce the violations of Plaintiff's Constitutional Rights." Dk.  p. 2. But the only acts allegedly taken by defendant Noe are: 1) calling the BOP

on one occasion; 2) lying by saying that Plaintiff had been communicating with her daughter, A.C. (the victim of Plaintiff's criminal sexual misconduct); and 3) requesting that Plaintiff cease communications to her family, which includes Plaintiff's two minor children. The facts alleged in the amended complaint, even in true, fail to show agreement between defendants Noe and Hermreck to deprive Plaintiff of his constitutional rights.

Specifically, no direct communication between Noe and defendant Hermreck is alleged in that complaint or is shown by the exhibits.[1] Instead, the relevant order states:

> I have received a written/verbal request concerning your personal correspondence and/or communications to TM and her children AC, IM, and GM. The request was received through the Intelligence and Investigation Unit at the El Dorado Corrections Facility. TM has requested that you not correspond and/or communicate with them from this date forward.

Dk. 11, Exh. 1, p. 1. Although the order to cease communications was signed by defendant Hermreck, who worked in the EAI, no facts allege any relationship, contact, or agreement between Hermreck and Noe. Just as "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge," *Dennis v. Sparks,* 449 U.S. 24, 26 (1980), Noe's contacting the BOP to ask

---

[1] "[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." *Oxendine v. Kaplan,* 241 F.3d 1272, 1275 (10th Cir. 2001).

to be placed on the negative mail list for the Plaintiff does not make her a co-conspirator with the State.

Additionally, the nature of the agreement must be directed at depriving the Plaintiff of his First Amendment right. *United States v. LaVallee*, 439 F.3d 670 (10th Cir. 2006) (examining 18 USC § 241 elements). The facts alleged by the Plaintiff fail to show any agreement to violate Plaintiff's constitutional rights. Plaintiff does not show that Noe and Hermreck agreed to any unlawful goal or had any intent to further those illegal aims. Bald allegations of a conspiracy are simply not sufficient to show that action was plausibly taken under color of state law, thus defendant Noe shall be dismissed as a party.[2]

### C. Defendant Hermreck

Defendant Hermreck is alleged to have been an Enforcement, Apprehension and Investigations employee of the KDOC at EDCF.[3] Plaintiff alleges that defendant Hermreck personally participated in the deprivation of his constitutional rights by acting upon Noe's request and by agreeing to prohibit Plaintiff from communicating with his children. Dk. 11, p. 3. Plaintiff refers the Court to Exhibit A, which includes the order to Plaintiff to cease communications signed by defendant Hermreck. Plaintiff

---

[2] Additionally, the amended complaint fails to cure Plaintiff's failure to make a prima facie showing of personal jurisdiction over Noe, who is alleged to be a citizen of the State of Texas. See *Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir. 1999).

[3] Plaintiff also alleges Hermreck acted as "legal representative" of defendant Noe, but Plaintiff does not allege any facts in support of that unusual assertion so the Court gives it no credit.

further alleges the following: 1) defendant Hermreck knew no evidence supported the allegations that Plaintiff had contacted Noe's daughter (the direct victim); 2) defendant Hermreck had full access to Plaintiff's account, mail, and records to verify or refute the allegations made by defendant Noe; and, 3) defendant Hermreck chose to ignore the facility mail records proving that Plaintiff had not contacted Noe's daughter. Assuming the truth of these allegations for purposes of this motion, the Court finds Plaintiff has alleged sufficient personal participation by defendant Hermreck to survive his dismissal as a party.

## IV. Failure to State a Claim

In its earlier order, the Court put Plaintiff on notice that the claims in his original complaint were not likely to succeed. Dk. 10, p. 11 (examining likelihood of success for issuance of preliminary injunction). The Court now examines whether the counts in the amended complaint state a claim on which relief may be granted.

### A. Count One

Plaintiff alleges in count one that defendants violated his First Amendment rights of free expression and speech by preventing him from writing to his children.

"Inmates clearly retain protections afforded by the First Amendment." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987). But "simply because prison inmates retain certain constitutional rights does not mean that these

rights are not subject to restrictions and limitations." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979). "The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilities ..." *Hudson v. Palmer,* 468 U.S. 517, 524 (1984) (citation omitted).

A prison regulation infringing on an inmate's right to free speech is valid if it is reasonably related to a legitimate penological interest, *see Turner v. Safley,* 482 U.S. 78, 89 (1987). Plaintiff thus has the burden to plead some plausible facts supporting his claim that the ban on communicating with his minor children imposed pursuant to IMPP 11-115 did not serve the legitimate purpose for the policy articulated by the State. *See Al-Owhali v. Holder*, 687 F.3d 1236, 1241 (10th Cir. 2012).

In upholding the constitutional validity of IMPP 11-115, the Kansas Court of Appeals held that the policy "serve[s] the correctional interests of safety, security, management, and control of the facility and provide[s] for the safety of the community in general." *Hill v. Simmons,* 33 Kan.App.2d 318, 319 (2004). It found that IMPP 11-115 was "simply an administrative measure designed to enhance ... the rehabilitation of sex offenders," and found the policy to be constitutional in all respects. *Id.* at 321.

Similarly, the federal court for this district has held that IMPP 11-115 serves a legitimate penological interest, stating:

> The KDOC policy attempts to balance the rights of the accused with the safety of the public, particularly its children. IMPP 11-115 provides

11

a system in which sex offenders may be managed in prison and in parole through treatment and programming. ... Furthermore, the court adopts the reasoning of the Kansas Court of Appeals decision in *Hill,* which found that IMPP 11-115 is constitutional.

*Fuller v. Werholtz,* 2005 WL 1631066 (D.Kan. July 11, 2005) (dismissing the case).

Further, the Secretary's designee has detailed the reasoning behind IMPP 11-115, stating that the purpose of the policy is to minimize the opportunities for further victimization of children:

> IMPP 11-115 provides for the manner in which sex offenders are managed while in prison and on parole. IMPP 11-115 also specifies the manner in which an inmate may apply for a waiver of any of the provisions of this policy.
> This policy was implemented based on the advice and best judgment of a large number of corrections and sex offender treatment professionals, as well as input from victims of sexual assault. The purpose of the policy is to minimize, as much as is reasonably possible, the opportunities for further victimization of children. Research has demonstrated that sex offenders often have more victims than those identified in the offense for which they are serving a sentence and that they may frequently shift the type of person they victimize based on what opportunities are available.
> Sex offenders are incarcerated for sexually victimizing some person. This statistically places them at higher risk for victimizing someone else, particularly if they have not completed treatment. IMPP 11-115 was designed to reduce the likelihood that new victims of sexual abuse will be created.

*Fuller*, 2005 WL 1631066, p. 3 (Complaint, Ex. N).

Two articulated legitimate penological interests thus support the challenged ban on a sex offender's communication with his children: protecting the children themselves, and furthering the rehabilitation of the sex offenders. Deference should be given to prison administrators' decisions,

especially when those decisions deal with issues of prison safety and security. *See Turner,* 482 U.S. at 89; *see also Cotner v. Knight,* 61 F.3d 915 (10th Cir. 1995) (Table) ("[T]he rights of prisoners to correspond with people outside of the prison must be weighed against the intractable problems of prison safety and security, areas in which prison officials are far better equipped to deal with than the judiciary.").

Similarly, cases outside this jurisdiction have routinely upheld requests not to receive mail from a particular inmate, based on the government's general interest in protecting the public from harassment by inmates. *See e.g.*, *Tompkins v. Dep't of Corr.,* No. 1:08–cv–322–01–MU, 2009 WL 995573, at *1 (W.D.N.C. Apr. 14, 2009) (Mullen, J.) (finding a legitimate penological interest in "protecting the public from harassment by inmates by prohibiting an inmate from sending letters to persons who have indicated in writing that they do not wish to receive mail from a particular inmate."); *Berdella v. Delo,* 972 F.2d 204, 209 (8th Cir. 1992) (finding a policy prohibiting inmates from sending mail to persons who have indicated in writing that they do not wish to receive mail from a particular inmate is generally necessary to serve the government's interest in protecting the public from harassment by inmates); *Jones v. Diamond,* 594 F.2d 997, 1014 (5th Cir. 1979) (finding "jail officials may employ a 'negative mail list' to eliminate any prisoner correspondence with those on the outside who affirmatively indicate that they do not wish to receive correspondence from a

particular prisoner"); *Guajardo v. Estelle,* 580 F.2d 748, 753 (5th Cir. 1978) (affirming that a negative mail list does not violate prisoners' First Amendment rights and stating that such lists "permit [prison officials] to deny inmates permission to correspond with persons who have objected to further correspondence"); *Hill v. Terrell*, 846 F.Supp.2d 488, 491-92 (W.D.N.C. 2012) (finding no violation of Plaintiff's constitutional rights when defendants followed prison policy by prohibiting Plaintiff from communicating with individuals who had requested that they not receive letters from him).

Where the person requesting no contact is a victim, the policy reasons are even stronger. *See Samford v. Drekte,* 562 F.3d 674, 682 (5th Cir. Mar. 3, 2009) (dismissing case for failure to state a claim because enforcement of a "negative mail list" that included the inmate's two minor sons did not unduly infringe upon the inmate's First Amendment rights). Even in the absence of a court order prohibiting contact with one's children, "prisons have legitimate interest in protecting crime victims and their families from the unwanted communications of prisoners when a victim requests that the prison prevent such communication." *Samford*, 562 F.3d at 680.

The government's policy reasons are stronger still when the no communication order is between a sex offender and his victim. In *Alex v. Beard*, 2010 WL 1416837 (M.D.Pa. 2010), the court found no violation of the

inmate's constitutional rights by the prison's no-contact policy which prevented a sex offender from visitation with his daughter.

> A prison policy that restricts contact between a sex offender and his victim is clearly rationally related to the legitimate interest of protecting victims and their families from unwanted communication and harassment by prisoners when a victim requests such protection. *See Overton,* 539 U.S. at 132-33, 123 S.Ct. at 2168 (policy designed to protect children from abuser or misconduct that could occur during their visit).

*Alex*, at p. 4. The same rationale prevails when the ban is on an offender's contact with his own children. *See Kailey v. Zavaras*, 2011 WL 5593671 (D.Colo. 2011) (finding no constitutional violation by prison's prohibition on sex offender's corresponding with his daughters/victims). Accordingly, the Court finds that the challenged policy is clearly supported by a legitimate penological interest.

The Court also asks whether the enforcement of the policy in this case bears a rational connection to its legitimate interest. Plaintiff acknowledges that he is a sex offender, that he has not completed treatment, that the direct victim of his criminal sexual acts was his minor stepdaughter, that his stepdaughter lives with his two minor children and their mother, and that the mother requested the BOP to enforce a no-communication order for the Plaintiff. Thus, there is a valid, rational connection between IMPP 11-115 and the legitimate governmental interest which justifies it. Plaintiff has failed to plead plausible facts supporting his claim that the ban on his communicating with his minor children failed to serve the purposes articulated by the State.

*Compare e.g., Mohammed v. Holder,* 07–CV–02697–BNB, 2011 WL 4501959 (D.Colo. Sept. 29, 2011) (concluding that an inmate's challenge to SAMs was plausible where his pleadings pointed to a recommendation from the warden that the inmate's privileges be expanded). The challenged policy is thus reasonably related to a legitimate penological interest, and its application to the Plaintiff was reasonable. Accordingly, this count fails to state a claim for relief and shall be dismissed.

### B. Count Two

Plaintiff alleges in count two that defendants violated his Fifth and Fourteenth Amendment rights by denying him due process because he had no hearing or opportunity to protest the no-contact order and was coerced into signing that order, all in violation of his liberty interest. To determine whether an individual was denied procedural due process, courts asks whether the individual possessed a protected interest triggering due process protections, and, if so, whether the individual was afforded an appropriate level of process. *Riggins v. Goodman,* 572 F.3d 1101, 1108 (10th Cir. 2009).

#### 1. What Process is Due

Plaintiff does not cite any law, regulation, or policy requiring a hearing before the prison may impose of a no contact order. Plaintiff cites no cases holding that due process can be satisfied only by providing a hearing, and this Court knows of no such authority.

Instead, the requirements of due process are "flexible and cal[l] for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). Deprivation of a prisoner's property or liberty by a state employee does not violate procedural due process rights if an adequate state post-deprivation remedy exists. *Cavender v. Uphoff*, 125 F.3d 861 (Table) (10th Cir. 1997). IMPP 15-115's specific override process and the BOP general grievance procedures provide a meaningful opportunity for sex offenders to seek review of no-contact orders.

Plaintiff participated in the prison's grievance process, and received substantive responses from his Unit Team, the Warden, and EDCF's Legal Counsel. Plaintiff's use of the grievance or override process is a sufficient post-deprivation remedy to satisfy procedural due process. *See Hudson v. Palmer*, 468 U.S. 517, 536 n. 15 (1984). Therefore, Plaintiff's due process claim fails, even assuming that he has a protected liberty interest.

### 2. Liberty Interest

"To make a claim of denial of due process in violation of the Fourteenth Amendment, a plaintiff must show the deprivation of a protected liberty or property interest." *Schmitt v. Rice,* 421 Fed. Appx. 858, 861 (10th Cir. 2011) (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569 (1972)). Plaintiff alleges a liberty interest in communicating with his children, particularly since they were not the direct victims of his criminal sexual acts.

17

A liberty interest may be inherent in the Constitution. The United States Supreme Court has held that "parents have a liberty interest, protected by the Constitution, in having a reasonable opportunity to develop close relations with their children." *See Hodgson v. Minnesota,* 497 U.S. 417, 484 (1990) (Scalia, J., concurring in part and dissenting in part).

Prisoners, however, do not have a fundamental right to visitation arising directly from the Constitution. *See Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989) (denial of prison access to particular visitor is well within the nature of restriction associated with a prison sentence). "Rather, prison officials necessarily enjoy broad discretion in controlling visitor access to a prisoner...." *See Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir.1998). The United States Constitution allows prison officials to impose reasonable restrictions upon visitation, even visitation with family members. *Overton,* 539 U.S. at 131.

> "The very object of imprisonment is confinement," and "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Overton v. Bazzetta,* 539 U.S. 126, 123 S.Ct. 2162, 2167, 156 L.Ed.2d 162 (2003). Prisoners do not retain rights inconsistent with proper incarceration, and "freedom of association is among the rights least compatible with incarceration." *Id.* Accordingly, the Constitution allows prison officials to impose reasonable restrictions upon visitation. *See id.*

*Wirsching v. Colorado*, 360 F.3d 1191 at 1198 (10th Cir. 2004) (finding prison officials did not violate sex offender's rights of familial association and due process by prohibiting visitation with his child). Prison inmates retain

18

only those rights consistent with legitimate penal objectives. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977).

A liberty interest may also be created by State law. *See Hewitt v. Helms,* 459 U.S. 460 (1983) (holding that State laws or regulations expressed in mandatory language may create a liberty interest subject to due process protections). Plaintiff appears to believe that KAR 44-12-601 creates a liberty interest by providing that a prisoner may write to his child unless that child was the victim of the crime for which he is incarcerated. Plaintiff's minor children were not the direct victims of the sexual crimes for which he is imprisoned.

The relevant portion of that regulation governing inmate communications states:

> (10) Inmates shall not correspond with any person, either directly or through third parties, who has filed a written objection to the correspondence with the director of victim services in the department of corrections central office. The director of victim services in the department of corrections central office shall notify the warden of the facility where the offender is incarcerated of any written objections to correspondence sent by the offender within three business days of receipt of the objection.
> (A) The inmate shall be notified of the objection in writing when it is received, but shall not be required to be informed of the exact contents of the objection.
> (B) In the instance of unwanted correspondence to a minor, the objection shall be filed by the parent or guardian of the minor.
> (C) Orders shall be developed by the warden of each facility to prevent further correspondence from being sent to those who have filed an objection.
> (D) *This regulation shall not prevent an inmate from writing to the inmate's natural or adoptive child, unless the child was the victim of the crime for which the inmate is incarcerated* and the person having legal custody of the child files a written objection with the director of

> victim services in the department of corrections central office, and the
> inmate has not obtained a court order permitting this written
> communication with the child. The director of victim services in the
> department of corrections shall inform the warden of the facility where
> the inmate is assigned of any objection from the person having legal
> custody of the child within three business days of its receipt.

KAR 44-12-601(10) (italics added). Although that regulation defines other

terms, it does not define "victim," *see* KAR 44-12-601(a). It therefore does

not conflict with the broad definition of "victim" in IMPP 11-115, which

includes not only the person who was sexually assaulted, but also that

person's family.

Further, *Hewitt's* general rule permitting liberty interests to arise from

State law does not apply to prison regulations. *See Sandin v. Conner,* 515

U.S. 472, 482, (1995) (finding no constitutionally protected liberty interest

in prison regulations phrased in mandatory terms, in part because "[s]uch

guidelines are not set forth solely to benefit the prisoner"). Instead, the

Court must determine if the restriction "imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandlin*, 515 U.S. at 484.

> After *Sandin,* ... the touchstone of the inquiry into the existence of a
> protected, state-created liberty interest in avoiding restrictive
> conditions of confinement is not the language of regulations regarding
> those conditions but the nature of those conditions themselves "in
> relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct.
> 2293.

*Wilkinson v. Austin,* 545 U.S. 209, 223 (2005). After *Sandin,* the Tenth

Circuit Court of Appeals has "repeatedly and consistently disavowed a liberty

20

interest in visitation." *Dennis v. Tate,* 2012 WL 5289421 (W.D.Okla. 2012),

citing *Marshall v. Morton,* 421 Fed. Appx. 832, 838 (10th Cir. 2011) (stating

that restrictions on a prisoner's visitation "are not different in such degree

and duration as compared with the ordinary incidents of prisoner life to

constitute protected liberty interests under the Due Process Clause"), *cert.*

*denied,* ___ U.S.___, 132 S.Ct. 1020, 2012 WL 33454 (Jan. 9, 2012) (No. 11–

7037), and other cases. Similarly, because the restrictions on Plaintiff's

communication with his children are not sufficiently different to constitute a

protected liberty interest, this count shall be dismissed.

### C. The Conspiracy Claims

#### 1. Count Three

Plaintiff alleges in count three that defendants conspired to violate his

1st, 5th and 14th Amendment rights. This claim fails for the reasons stated

above noting Plaintiff's failure to establish any agreement between the

defendants to violate Plaintiff's constitutional rights.

#### 2. Count Four

The fourth count alleges that defendant  Hermreck neglected to

prevent the conspiracy. Allegedly, had Hermreck investigated, Plaintiff's

prison records would have shown him that Plaintiff had not contacted his

stepdaughter (the direct victim), contrary to Noe's assertions. But even

assuming the truth of those allegations, negligence is not a valid claim in

this action. A state official's negligent conduct, even if it causes injury, does

not constitute an actionable deprivation under § 1983. *County of Sacramento v. Lewis,* 523 U.S. 833, (1998); *Daniels v. Williams,* 474 U.S. 327, 331, (1986). This count fails to state a claim alleging a constitutional violation by defendant Hermreck.

### D. Counts Five Through Eight

The fifth, sixth, seventh, and eighth counts are brought solely against defendant Noe. These counts are not actionable against her under section 1983 because she has been dismissed as a party defendant for Plaintiff's failure to show that she individually acted under color of state law or was engaged in a conspiracy with state officials to deny constitutional rights.

Additionally, the fifth through eighth counts are, respectively, of perjury, subornation of perjury, obstruction of process, and criminal defamation. These claims each allege a crime, but criminal statutes that do not provide for a private right of action are not enforceable through a civil action, whether under Kansas law, *see Lovewell v. Stowell*, 202 P.3d 108 (Table) (Mar. 6, 2009), or under federal law, see *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). Because these statutes do not provide for a private right of action, Plaintiff cannot personally bring criminal charges against anyone.

Even assuming, however, a private right of action and state action by defendant Noe, counts five through eight fail to allege any plausible

constitutional violation under *Iqbal*. For these multiple reasons, counts five, six, seven and eight shall be dismissed for failure to state a claim.

IT IS THEREFORE ORDERED that this action is dismissed with prejudice under 28 U.S.C. § 1915A (a), (b), and 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

IT IS FURTHER ORDERED that plaintiff's Motion to Proceed without Prepayment of Fees (Doc. 3) is granted.  Plaintiff is hereby assessed the remainder of the full filing fee to be paid through payments automatically deducted from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2).  The Finance Office at the facility where plaintiff is currently incarcerated is directed by copy of this order to collect from plaintiff's account and pay to the clerk of this court twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until plaintiff's outstanding filing fee obligation has been paid in full.  Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

The clerk is directed to send a copy of this Order to plaintiff, to the finance officer at the institution in which plaintiff is currently confined, and to the court's finance office.

23

Dated this 14th day of March, 2013, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge